

## IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA

### 136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303
### SUMMONS

Tri-State Consumer Insurance Company, Inc. )    Case No.: _2011 CU 155485_

)
_____ )
**Plaintiff,**           )
vs.                    )
)
Lexisnexis Risk Solutions, Inc., formerly   )
known as Choicepoint Services, Inc.,      )
survivor entity of its merger with Insurity, LLC, )
a/k/a "Insurity"   **Defendant**        )
)
)

TO THE ABOVE NAMED DEFENDANT(S):

Your are hereby summoned and required to file with the Clerk of said Court and serve upon plaintiff's attorney, whose name and address is:

> Samuel P. Pierce, Jr.
> Charles D. Gabriel
> Pierce, Gabriel & Parker, LLC
> 11675 Great Oaks Way, Suite 125
> Alpharetta, GA 30022

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. **IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

This ___21___ day of __JANUARY__, 20_11_

> Honorable Cathelene "Tina" Robinson
> Clerk of Superior Court
>
> By_____
> Deputy Clerk

To defendant upon whom this petition is served:

This copy of complaint and summons was served upon you_____, 20_____

_____
Deputy Sherriff

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used

EXHIBIT A - 1

## IN THE SUPERIOR COURT OF FULTON COUNTY

## STATE OF GEORGIA

| | |
|---|---|
| TRI-STATE CONSUMER INSURANCE COMPANY, INC.<br>　　　Plaintiff,<br><br>vs.<br><br>LEXISNEXIS RISK SOLUTIONS, INC.,<br>Formerly Known as ChoicePoint<br>Services, Inc., Survivor Entity of its<br>Merger with Insurity, LLC, a/k/a<br>"Insurity"<br>　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action File No. *2011CV195485*

Hon. *BAXTER*, Judge

FILED IN OFFICE

JAN 2 1 2011

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY GA

## PLAINTIFF'S COMPLAINT

COMES NOW, the Plaintiff TRI-STATE CONSUMER INSURANCE COMPANY, INC., naming as Defendant LexisNexis Risk Solutions, Inc., formerly known as ChoicePoint Services, Inc., survivor entity of its merger with Insurity, LLC and respectfully shows the Court as follows:

1.

The Plaintiff, Tri-State Consumer Insurance Company, Inc., is a New York State registered corporation with its principal place of business at 575 Jericho Turnpike, Jericho, New York 11753; it is a New York licensed insurance company.

EXHIBIT A - 2

2.

The Defendant LexisNexis Risk Solutions, Inc. is a Georgia corporation. It has appointed as its registered agent for service of process CT Corporation Systems, 1201 Peachtree Street, NE, Atlanta, Fulton County, Georgia 30361.

2.

In 2008, Insurity, LLC was a Georgia Limited Liability Company.

3.

On or about December 31, 2008, Insurity, LLC and ChoicePoint Services, Inc. merged. The surviving entity was ChoicePoint Services, Inc. ChoicePoint Services, Inc. was a Georgia for profit corporation.

4.

The entity ChoicePoint Services, Inc. amended its Articles of Incorporation changing the name of its corporation to LexisNexis Risk Solutions, Inc. on or about January 1, 2010.

5.

The Defendant LexisNexis Risk Solutions, Inc. as the surviving entity through a name change is responsible for the obligations of Insurity, LLC.

6.

LexisNexis Risk Solutions, Inc. is subject to the jurisdiction of this Court.

7.

LexisNexis Risk Solutions, Inc. is subject to the venue of this Court.

8.

Jurisdiction and venue are properly laid in the Superior Court of Fulton County.

9.

On or about March 31, 2008, Insurity, LLC, (hereinafter "Defendant" or "Insurity") executed a document entitled "Master Agreement" as did Tri-State Consumer Insurance Company, Inc. (hereinafter "Plaintiff" or "Tri-State"). A true and accurate copy of that "Master Agreement" document (hereinafter "Master Agreement" or "the Agreement") is attached hereto as Exhibit "A."

10.

On or about March 31, 2008, Insurity and Tri-State also each executed a document entitled "Schedule - Software & Services." A true and accurate copy of that "Schedule; Software & Services" (hereinafter "Schedule") document is attached hereto as Exhibit "B."

11.

Pursuant to the Schedule, Insurity purportedly agreed to deliver to Tri-State certain industry specific software described generally as "...the Base Software for Policy Decisions, Billing Decisions, and Reporting Decisions as it exists as of the effective date the Master Agreement, without modification, except as described below" (hereinafter "Base Software") (See Exhibit B, "Schedule" at paragraph 6 Project Scope)

12.

The "Base Software" was represented to support New York insurance issues and support certain of Plaintiff's insurance lines of business including personal auto, homeowner's, and personal umbrella. That "Base Software" was represented to support -- for each personal auto, homeowner's, and personal umbrella lines of business -- the following:

(1) New Business Quote/Issue;

(2) Renewal Quote/Issue;

(3) Endorsement;

(4) Cancel;

(5) Reinstatement;

(6) View and Reprint Documents;

(7) Non-Renewal;

(8) Out-of-sequence change endorsement processing; and

(9) Rewrites.

13.

The "Base Software" ("BS") was to be implemented as a part of the Implementation Services and was also to include the following standard customization items: (1) VIN verification; and (2) Interfaces for ChoicePoint CLUE (Home and Auto), ChoicePoint Current Carrier, ChoicePoint Credit Scoring, ChoicePoint MVR, ChoicePoint Data Pre-fill, and ChoicePoint NY List Service.

14.

That same "Base Software" and Implementation Service was to include a Consumer User Interface and Agent User Interface. The "Base Software" was also to include a batch print administration.

15.

The license fee for the "Base Software" was One Million, Two Hundred and Fifty Thousand Dollars ($1,250,000.00) to be paid in installments of $250,000 upon signing of the Agreement and then $125,000 monthly thereafter from May 1st through December 1, 2008. To date, Tri-State has paid Defendant One Million One Hundred Forty Seven Thousand Seven Hundred Twenty Six Dollars and Thirteen cents ($1,147,726.13).

16.

None of the deliverables set forth within the project scope was delivered by Defendant to Tri-State on schedule or by deadline, to the extent that any schedule or deadline for submission of deliverables existed or had been set or established by contract between the parties.

17.

Of the elements set forth in the project scope and arguably delivered by Defendant, none met, constituted or "...contain[ed] all of the features described in, ... performed all of the material functions set forth in, and [/ or] operated in substantial conformance with, its applicable Specifications and Documentation..." as

warranted and required in the Master Agreement (See Section 8. WARRANTIES AND LIMITATION OF LIABILITY at Paragraph 8.1 Software Warranty).

18.

The Defendant failed to meet or comply with any delivery schedule or deadline, to the extent that any schedule or deadline for submission of deliverables existed or had been set or established by contract between the parties.

19.

At best, the Defendant only submitted one software element deliverable which was the "auto process."

20.

At no time from the signing of the Agreement or the Schedule on March 31, 2008, have there been set forth and mutually agreed to specific dates for performance by Insurity or the delivery of the promised product to Tri State and, to the extent there may have been, the dates were subject to Defendant's unilateral power to modify or disregard.

21.

In fact, as late as May 21, 2009, over one year after the signing of the Agreement and Schedule documents, Tri-State's Project Manager communicated to his Insurity counterpart by eMail:

> As far as the option/dates you listed - as you are the project manager for Insurity development - *please provide TSC [Tri State Consumer Insurance Company, Inc.] with schedule that delivers quality product on time in a logical, productive, well*

*communicated way.* I don't have insight into what Insurity can or cannot delivery by what date - only you do. I am not going to pick deliverables of software or associated dates - you tell me what you are delivering and when, and what the ramifications of the delivery and dates are on the overall project schedules.

(eMail Thursday May 21, 2009 from Peter Kardas to Michelle Piotrowski at 8:57 am – emphasis added)

### 22.

Essential elements were not defined or agreed to either in the "agreement" or in the "schedule." Nor were there sufficient details agreed to which would permit the determination of a time for delivery of either the "base software" as set forth within the "schedule" or any of the individual elements comprising the "base software" as set forth within the "schedule."

### 23.

Upon information and belief, Defendant and its employees and agents deceived Plaintiff in the furnishing of its software services.

### 24.

Defendant, by and through its employees and agents travelled to Plaintiff's New York place of business in January 2008, and there "[C]onduct[ed] a "Requirements Assessment project that will document high level functional requirements and create a "Formal Proposal" to develop a solution for policy administration processes" for Plaintiff.

25.

Upon information and belief, Defendant thereupon knew that its proprietary

Software would not or could not satisfy Plaintiff's known requirements.

26.

By eMail from Tri State's Project Manager to Defendant's Project Manager

Michelle Piotrowski dated Monday May 18, 2009 at 7:03 AM, Defendant was

rebuked for its pattern of concealment and deception:

> Michelle,
> You said - "We found a significant number of issues with the
> raters that were provided. " But Michelle, it is the 11th hour and
> to date you have told me that Insurity's development and QA of
> TSC'S software was going perfectly fine. You have communicated
> only positive information on Insurity's development of our
> software. To date, you have never hinted of any potential delays
> or problems. Additionally, Insurity has been working on our
> rating software for many months - why on the scheduled day of
> delivery are you informing us of "significant number of issues"?
> These items should have been found long along - can anyone
> doubt that? The only thing I can surmise is your dev was late,
> thus your QA was late, thus I wasn't being given an accurate
> information on the status of Insurity's development of TSC
> software. What else can I think? I can only hope the issues are
> minor and not major. Do you really know? [emphasis original]

27.

Upon information and belief, Defendant Insurity knew its proprietary

Software which was to form the "Base Software" for Plaintiff was not materially as

represented to Plaintiff.

28.

Upon information and belief, Defendant Insurity and its employees and agents materially misrepresented to Plaintiff and intentionally omitted and withheld material information from Plaintiff and its employees and agents regarding the capabilities, functionalities and performance of its propriety Software as they attempted to modify it for the benefit and use of Plaintiff

29.

In anticipation of and with the expectation that the Defendant would develop, deliver, and implement the "software" to Tri-State in a manner which would be useful in its business, Tri-State made payment to the Defendant of the following sums:

- $250,000.00 on or about April 18, 2008 representing the base software license fee;

- $125,000.00 on or about June 20, 2008 for the May 2008 base software license fee;

- $125,000.00 on or about July 24, 2008 for the June 2008 base software license fee;

- $125,000.00 on or about August 8, 2008 for the July 2008 base software license fee;

- $125,000.00 on or about August 29, 2008 for the August 2008 base software license fee;

- $125,000.00 on or about September 19, 2008 for the September 2008 base software license fee;

- $125,000.00 on or about November 7, 2008 for the October 2008 base software license fee; and

- $125,000.00 on or about November 13, 2008 for the November 2008 base software license fee.

### 30.

In addition to those sums, on or about July 28, 2008, the Defendant invoiced Tri-State for billable travel expense in the sum of $4,801.23 which Tri-State paid on or about August 15, 2008.

### 31.

On or about September 30, 2008, the Defendant also invoiced the sum of $3,403.52 for travel expenses allegedly incurred by its staff. Tri-State paid this invoice on or about October 13, 2008.

### 32.

Additionally, on or about September 30, 2008, the Defendant invoiced Tri-State for billable travel expense in the sum of $2,867.61 which was paid on or about October 13, 2008.

### 33.

On or about January 3, 2008, the Defendant invoiced Tri-State for the following: "conduct a 'Requirements Assessment' project that will document high level functional requirements and create a 'Formal Proposal' to develop a solution for policy administration processes" in the amount of $6,000.00. The Plaintiff paid Defendant the sum on or about January 10, 2008.

34.

None of the elements arguably delivered or as set forth in the project scope performed as represented. The products and services provided by the Defendant to Tri-State have absolutely no value.

## COUNT ONE

## Unjust Enrichment
## Constructive Trust

35.

Plaintiff incorporates by reference paragraphs 1 through 34 of its Complaint as if the same were more fully set forth herein.

36.

The payments by Tri-State to the Defendant totaling One Million One Hundred Forty Seven Thousand Seven Hundred Twenty Six Dollars and Thirteen cents ($1,147,726.13) constitute an unjust enrichment of the Defendant at your Plaintiff's expense.

37.

The Defendant has been conferred a benefit by Tri-State to which the Defendant should have no claim or any right to retain any of those benefits, to wit: One Million One Hundred Forty Seven Thousand Seven Hundred Twenty Six Dollars and Thirteen cents ($1,147,726.13).

38.

The Court should impose a constructive trust upon monies paid by the Plaintiff to the Defendant, to wit: One Million One Hundred Forty Seven Thousand Seven Hundred Twenty Six Dollars and Thirteen cents ($1,147,726.13), and order the return of those amounts to the Plaintiff.

## COUNT II

### Deceptive Acts And Practices
### New York State General Business Law §349

39.

Plaintiff incorporates by reference paragraphs 1 through 38 of its Complaint as if the same were more fully set forth herein.

40.

During the negotiations for, the furnishing of and attempts to resolve conflicts involving Defendant's services in licensing its proprietary Software, its modification of the Software for Plaintiff's use and Defendant's non-delivery of a usable system for which Plaintiff paid Defendant over One Million Dollars, Defendant acting through its employees and agents committed deceptive acts and employed deceptive practices contrary to New York State General Business Law ("NY GBL") § 349.

41.

By virtue of Defendant's behavior in violation of NY GBL § 349, Plaintiff has been harmed and has suffered the loss of actual damages, to wit:  the monies paid to

Defendant plus other expenses incurred plus reasonable attorney fees as allowed under NY GBL § 349 (h).

## COUNT III

## Breach Of Warranty

### 42.

Plaintiff incorporates by reference paragraphs 1 through 41 of its Complaint as if the same were more fully set forth herein.

### 43.

In the alternative, should it be determined that a valid, *de facto* common law contract was created between Plaintiff and Defendant, the Plaintiff shows that the Defendant breached its obligations pursuant to any such agreement in that it did not timely deliver the "base software" as understood and agreed or any of the individual elements set forth in the project scope with features as described, or which performed the material functions set forth within the intended project scope, or which operated in substantial conformance with all of the applicable specifications and documentation.

### 44.

Any contract for licensure of the Base Software and associated services contained an implied warranty that the software and services would be of value to Tri-State and provide it with a useful, functioning, quality system.

### 45.

The software and services did not provide Plaintiff with a useful, functioning, quality system.

46.

The software and services provided by the Defendant to your Plaintiff had a value of zero dollars. Had the software and services been of the value represented by the Defendant, the value would have been slightly in excess of One Million One Hundred Forty Seven Thousand Seven Hundred Twenty Six Dollars and Thirteen cents ($1,147,726.13).

## COUNT IV

## Breach Of Warranty

47.

Plaintiff incorporates by reference paragraphs 1 through 46 of its Complaint as if the same were more fully set forth herein.

48.

At all times material hereto the Defendant was in the business of licensing and selling computer software and ancillary services including, but not limited to implementation, integration, customization and maintenance.

49.

In 2008, the Defendant invoiced and Plaintiff paid for software licensure and services in the sum of One Million One Hundred Forty Seven Thousand Seven Hundred Twenty Six Dollars and Thirteen cents ($1,147,726.13).

50.

Defendant knew or had reason to know the Plaintiff needed the Defendant's products for the proper operation of its insurance business.

51.

Plaintiff relied on the Defendant's represented industry specific skill and represented industry specific expertise in the technology needed for this segment of the insurance industry and Defendant's industry specific software product in selecting the software and services for Plaintiff's utilization.

52.

The goods and services were not fit for the intended and known utilization by the Plaintiff.

53.

The software and services provided by the Defendant to your Plaintiff had a value of zero dollars. Had the software and services been of the value represented by the Defendant, the value would have been slightly in excess of One Million One Hundred Forty Seven Thousand Seven Hundred Twenty Six Dollars and Thirteen cents ($1,147,726.13).

**[The Remainder Of This Page Intentionally Left Blank]**

## COUNT V

## Breach Of Contract

54.

Plaintiff incorporates by reference paragraphs 1 through 53 of its Complaint as if the same were more fully set forth herein.

55.

In the alternative, should it be determined that the March 31, 2008 Master Agreement and the March 31, 2008 Schedule; Software & Services constitutes a valid and enforceable contract, the Plaintiff shows that the Defendant breached its obligations pursuant to said contract in that it did not timely deliver the "base software" as understood and agreed or any of the individual elements set forth in the project scope with features as described, or which performed the material functions set forth within the intended project scope, or which operated in substantial conformance with all of the applicable specifications and documentation.

56.

As a direct result of the Defendant's failure to perform or other meet its contractual obligations the Plaintiff was harmed.

57.

Plaintiff paid Defendant pursuant to the Agreement One Million One Hundred Forty Seven Thousand Seven Hundred Twenty Six Dollars and Thirteen cents

($1,147,726.13) and received no value in exchange due to Defendant's failure to perform or deliver as promised.

58.

Pursuant to the terms of the Agreement, Plaintiff is limited in its recovery to the amount of money actually paid to Defendant.

59.

Plaintiff is entitled to recover damages from Defendant as a result of Defendant's breach of contract and failure to perform in the sum of One Million One Hundred Forty Seven Thousand Seven Hundred Twenty Six Dollars and Thirteen cents ($1,147,726.13)

WHEREFORE Plaintiff prays:

(a)    That process and summons issue and that the Defendant be served in accordance with the laws of this State;

(b)    That the Defendant be required to answer the Complaint within thirty (30) days from the date of service upon it;

(c)    That the Plaintiff TRI-STATE CONSUMER INSURANCE COMPANY, INC. have verdict and judgment against the Defendant in the sum of One Million One Hundred Forty Seven Thousand Seven Hundred Twenty Six Dollars and Thirteen cents ($1,147,726.13) Dollars on Count I of its Complaint;

(d)     That the Plaintiff TRI-STATE CONSUMER INSURANCE COMPANY, INC.
        have verdict and judgment against the Defendant in the sum of One
        Million One Hundred Forty Seven Thousand Seven Hundred Twenty Six
        Dollars and Thirteen cents ($1,147,726.13) Dollars plus other damages
        and attorneys' fees as demonstrated upon the trial of this case on
        Count II of its Complaint;

(e)     That the Plaintiff TRI-STATE CONSUMER INSURANCE COMPANY, INC.
        have verdict and judgment against the Defendant in the sum of One
        Million One Hundred Forty Seven Thousand Seven Hundred Twenty Six
        Dollars and Thirteen cents ($1,147,726.13) Dollars on Count III of its
        Complaint;

(f)     That the Plaintiff TRI-STATE CONSUMER INSURANCE COMPANY, INC.
        have verdict and judgment against the Defendant in the sum of One
        Million One Hundred Forty Seven Thousand Seven Hundred Twenty Six
        Dollars and Thirteen cents ($1,147,726.13) Dollars on Count IV of its
        Complaint;

(g)     That the Plaintiff TRI-STATE CONSUMER INSURANCE COMPANY, INC.
        have verdict and judgment against the Defendant in the sum of One
        Million One Hundred Forty Seven Thousand Seven Hundred Twenty Six
        Dollars and Thirteen cents ($1,147,726.13) Dollars on Count V of its
        Complaint;

(h)     For such other and further relief as may be meet and appropriate under the circumstances of this case.

Respectfully submitted, this the _____ day of January, 2011.

PIERCE, GABRIEL & PARKER, LLC

Samuel P. Pierce, Jr.
Georgia State Bar No. 579550

Charles D. Gabriel
Georgia State Bar No. 281649

ATTORNEYS FOR PLAINTIFF

Royal Centre One, Suite 125
11675 Great Oaks Way
Alpharetta, Georgia 30022
(678) 735-5900 Main
(678) 735-5901 Fax